[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-17166

_____

D. C. Docket No. 05-20609-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCOS PERRIS,
a.k.a. Marcos A. Perris,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 31, 2007)**

Before TJOFLAT, HULL and BOWMAN,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Defendant Marcos Perris appeals his conviction and sentence for conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. After review and oral argument, we affirm.

## I. BACKGROUND

A two-count indictment charged Perris with: (1) conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) attempted possession of 500 grams or more of a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Perris pled not guilty and proceeded to trial. The jury found Perris guilty of Count One (conspiracy), but not guilty of Count Two (attempted possession).

The presentence investigation report ("PSI") assigned Perris a base offense level of 28, based on a stipulated drug quantity of more than two kilograms of cocaine. See U.S.S.G. § 2D1.1(c)(6). The PSI recommended no enhancements or reductions. With an offense level of 28 and a criminal history category of I, Perris's advisory guidelines range was 78 to 97 months' imprisonment. The district court sentenced Perris to 78 months' imprisonment.

## II. DISCUSSION

### A. Sufficiency of the evidence

On appeal, Perris contends that there was insufficient evidence to support his drug conspiracy conviction in Count One.[1]  We recount the trial evidence in the light most favorable to the government and then explain why it was sufficient to support Perris's conviction.

Hector Quintana, an undercover Immigration and Customs Enforcement agent, posed as an employee at Miami International Airport to obtain an introduction to Victor Sanchez, Perris's co-conspirator.  Sanchez explained to Quintana that he wanted to start a cocaine trafficking route from Peru to Miami.  Quintana was to retrieve cocaine from passenger flights and deliver it to Sanchez for $3500 per kilogram.

In late 2004, Sanchez cancelled at least two smuggling operations at the last minute.  Each time he cancelled, Sanchez promised Quintana $1000 as a show of good faith; however, Sanchez had difficulty providing the full amount of the "good faith" money in both instances.  After the second operation was cancelled, Quintana told Sanchez he was losing patience, and Sanchez asked Quintana to be patient because Sanchez was dealing with the "money guy."  Thereafter, Quintana had no contact with Sanchez until April or May 2005.

---

[1]We review a defendant's challenge to the sufficiency of the evidence <u>de novo</u>, taking all reasonable inferences in the government's favor.  <u>See</u> <u>United States v. Rudisill</u>, 187 F.3d 1260, 1267 (11th Cir. 1999).

At that time, Sanchez placed Quintana in touch with Sanchez's contact in Peru. Sanchez's contact advised Quintana that he was shipping three kilograms of cocaine. The contact initially told Quintana that he did not believe Sanchez had the money to pay for the drugs and wanted to exclude Sanchez from the deal. Ultimately, however, Sanchez's contact shipped three kilograms of cocaine from Peru to Miami, two of which Quintana was to deliver to Sanchez. Quintana contacted Sanchez, and they eventually agreed to meet at the Dolphin Mall on July 8, 2005.

In Quintana's previous meetings with Sanchez, Sanchez had always brought another person with him in order to conduct counter-surveillance. When Quintana called Sanchez to set up the July 8 meeting, Quintana specifically asked Sanchez if Sanchez would bring anyone to the meeting with him. Quintana explained that he did not want to meet anyone new. Sanchez responded that he would conduct his business with Quintana face-to-face, and explained that if he were going to bring anyone, it would be the "money guy," just to make sure that the deal proceeded according to plan.

On July 8, law enforcement agents observed Sanchez and defendant Perris arrive together at the mall. Defendant Perris was driving the car, while Sanchez was in the front passenger seat. Both Sanchez and defendant Perris emerged from

4

the car, and Perris donned sunglasses, despite the fact that it was about to rain and very windy (a hurricane was coming through). While Sanchez began to walk toward the meeting point inside the mall, defendant Perris began to look around, peering into windows of parked cars in the mall parking lot. Perris then entered the mall and temporarily disappeared from the view of the surveillance agents.

Meanwhile, Quintana met Sanchez at the designated meeting point inside the mall. Quintana asked Sanchez if he had the money. After Sanchez showed Quintana that he had several $100 bills in his pocket, Quintana and Sanchez walked toward Quintana's vehicle to retrieve the cocaine. Quintana showed Sanchez the drugs, which were located in a blue carry-on bag in the trunk of Quintana's car, and Sanchez placed $7000 cash—the agreed-upon price for two kilograms of cocaine—in the trunk with the drugs.

The $7000 was in two "bundles." The first bundle consisted of $5000, and it had a paper wrapper around it with the figure "$5000" written on it. The second bundle consisted of $2000, but it bore no band or wrapper.

Sanchez took the blue carry-on bag containing the drugs and began walking back to his car. At this time, Sanchez made a telephone call on his cellular telephone, telling the unidentified recipient of the call to wait for him in the car. Sanchez was then arrested.

5

Shortly after Sanchez's arrest, defendant Perris returned to the parked car, where he was arrested and searched.[2] Perris was wearing a fanny pack that contained $3000 in cash. There was a wrapper around the $3000 found on Perris that said "$5000." This $5000 wrapper around Perris's $3000 was substantially similar to the wrapper that was around the $5000 found on Sanchez. Additionally, as noted earlier, Sanchez gave Quintana not only $5000 with a wrapper, but also $2000 without a wrapper, which explains why Perris had $3000 with a $5000 wrapper around it.

Defendant Perris's fanny pack also contained a key to a safe deposit box and a Visa card from Washington Mutual Bank. A subsequent search of the safe deposit box, which was leased in Perris's name, revealed $40,000 cash inside a brown paper bag.

Viewing all evidence in the light most favorable to the government, we conclude that the evidence was more than sufficient to support Perris's drug conspiracy conviction. Perris drove the drug buyer (Sanchez) to the scene of the drug buy, conducted counter-surveillance at the scene, and provided the money for the drug purchase. The evidence presented at trial thus "gave rise to a permissible inference of [Perris's] participation in the conspiracy." United States v. Gamboa,

_____

[2]The entire sequence of events at the mall (from Sanchez and Perris's arrival to Perris's arrest) lasted between ten and fifteen minutes.

6

166 F.3d 1327, 1332 (11th Cir. 1999) (quotation marks and citation omitted).

Defendant Perris contends that the evidence established only his "mere" presence" at the scene of the drug purchase and further argues that the government failed to prove that he was a knowing and willful participant in the drug transaction. We disagree. While Perris is correct that mere presence at the scene of a drug transaction is insufficient to prove participation in a drug conspiracy, "presence is no virtue." United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir. 1995). Indeed, presence is "'material, highly probative, and not to be discounted.'" Gamboa, 166 F.3d at 1332 (citation omitted). Moreover, Perris's knowing participation in the conspiracy need not have been proven by direct evidence; circumstantial evidence of participation is sufficient. Lyons, 53 F.3d at 1201.

Here, the circumstantial evidence clearly established that Perris was not "merely" present—Perris drove Sanchez to the mall, stayed at the mall and conducted counter-surveillance outside the mall, and supplied the money for the drug purchase. Accordingly, the evidence established that Perris was an active participant in the conspiracy. See Gamboa, 166 F.3d at 1331-32; Lyons, 53 F.3d at 1202-03; United States v. Gutierrez, 931 F.2d 1482, 1486-89 (11th Cir. 1991); United States v. Lopez, 898 F.2d 1505, 1509-10 (11th Cir. 1990).

Perris further argues that even if the jury could have reasonably inferred

7

from the evidence that Perris "gave Sanchez money," the jury could not have reasonably inferred that "Perris knew that this money was for an illegal narcotics transaction." We reject Perris's argument. In addition to the evidence discussed above, Sanchez advised Quintana prior to their July 8 meeting that if he brought anyone with him to the meeting, it would be the "money man," and Sanchez had brought counter-surveillance with him to other meetings with Quintana. See United States v. High, 117 F.3d 464, 469 (11th Cir. 1997).

In sum, we find the evidence was more than sufficient for the jury to conclude that Perris willfully and knowingly conspired with Sanchez to purchase the cocaine from Quintana with the intent to distribute.

**B.      Role reduction**

As for his 78-month sentence, Perris argues that he was entitled to a role reduction, pursuant to U.S.S.G. § 3B1.2. We disagree.[3]

Section 3B1.2 of the Sentencing Guidelines provides for a two-level reduction in a defendant's offense level if the defendant was a minor participant in any criminal activity, and a four-level reduction if the defendant was a minimal

---

[3]We have "long and repeatedly held that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). Following United States v. Booker, 543 U.S. 220, 261, 125 S. Ct. 738, 765 (2005), this standard of review remains unchanged. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).

participant. U.S.S.G. § 3B1.2(a)-(b). In determining whether a role reduction is warranted, a district court "should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." United States v. De Varon, 175 F.3d 930, 940 (11th Cir. 1999) (en banc). The defendant bears the burden of establishing his role by a preponderance of the evidence. Id. at 939.

The district court did not clearly err in denying Perris a role reduction. Under the first prong of the De Varon test, the district court held Perris accountable only for the amount of drugs that he conspired to possess.[4] Perris presented no evidence at sentencing in support of his role reduction argument, and on appeal, he essentially proffers nothing more than his sufficiency-of-the-evidence argument, which we have already rejected.

As to the second prong of the De Varon test, Perris has not met his burden of showing that Sanchez or other co-conspirators were more culpable than himself, and even if he had met that burden, it may be that no one in the conspiracy was a minor or minimal participant. See De Varon, 175 F.3d at 944. Again, Perris drove Sanchez to the drug purchase, supplied the money for the purchase, and conducted

---

[4]Perris did not object to the PSI's factual findings, and accordingly, those facts are deemed admitted. United States v. Burge, 407 F.3d 1183, 1191 (11th Cir.), cert. denied, 126 S. Ct. 551 (2005).

counter-surveillance at the purchase. Accordingly, the district court did not clearly err in denying Perris's request for a role reduction.

## C. Reasonableness

Perris also contends that the district court erroneously failed to consider the sentencing factors found in 18 U.S.C. § 3553(a) and that his sentence was unreasonable. His arguments lack merit.

Sentences imposed under an advisory guidelines system are reviewed for reasonableness. See United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005). "'In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors.'" United States v. Valnor, 451 F.3d 744, 750 (11th Cir. 2006) (citation omitted). While the district court must be guided by the § 3553(a) factors, there is no requirement that the district court engage in a detailed, step-by-step analysis of every factor. "[N]othing in Booker[5] or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). In fact, "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." Talley, 431 F.3d at 786.

[5]United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

Here, the district court explicitly stated that it considered the § 3553(a) factors. Moreover, the district court sentenced Perris to 78 months' imprisonment, which was at the low end of the advisory guidelines range of 78 to 97 months' imprisonment. While a guidelines-range sentence is not per se reasonable, we ordinarily expect such a sentence to be reasonable. Id. at 787-88. Finally, we observe that Perris offers nothing in support of his assertion that his sentence was unreasonable; instead, his brief merely cites the § 3553(a) factors and asserts—despite the district court's express statement to the contrary—that the district court failed to properly consider the factors. For all of these reasons, we reject Perris's contention that the district court erroneously applied the § 3553(a) factors and conclude that Perris has failed to show that his 78-month sentence is unreasonable.

**AFFIRMED.**